UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE NEW YORK CITY DISTRICT COUNCIL OF CARPENTERS PENSION FUND, WELFARE FUND, ANNUITY FUND, AND APPRENTICESHIP, JOURNEYMAN RETRAINING, EDUCATIONAL AND INDUSTRY FUND; TRUSTEES OF THE NEW YORK CITY CARPENTERS RELIEF AND CHARITY FUND; and CARPENTER CONTRACTOR ALLIANCE OF METROPOLITAN NEW YORK<br>Petitioners,<br>-v.-<br>EVERLAST SCAFFOLDING, INC.<br>Respondent. | 26 Civ. 781 (KPF)<br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund (the "ERISA Funds"); Trustees of the New York City Carpenters Relief and Charity Fund (the "Charity Fund"); and Carpenter Contractor Alliance of Metropolitan New York ("CCA Metro," and together with the ERISA Funds and the Charity Fund, the "Funds" or "Petitioners"), filed a motion for summary judgment in support of their petition to confirm an arbitral award (the "Award"). The Court has jurisdiction to confirm the Award pursuant to Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185. Everlast Scaffolding, Inc. ("Everlast" or "Respondent") opposes Petitioners' motion and seeks vacatur of the Award. For the reasons set forth below, the Court grants Petitioners' motion.

## BACKGROUND[1]

### A. Factual Background

#### 1. The Parties and the Collective Bargaining Agreement

The ERISA Funds are employer and employee trustees of multiemployer labor management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. (Pet. 56.1 ¶ 1). The trustees are fiduciaries of the ERISA Funds within the meaning of ERISA, *id.* § 1002(21). (*Id.*). The Charity Fund is a charitable organization established under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3). (*Id.* ¶ 2). CCA Metro is a labor management corporation operating pursuant to Section 302(c)(9) of the LMRA, 29 U.S.C. § 186(c)(9). (*Id.* ¶ 3).

---

[1] The facts set forth in this Opinion are drawn from Petitioners' Local Civil Rule 56.1 Statement ("Pet. 56.1" (Dkt. #15)) and Respondent's Rule 56.1 Response to Petitioners' Rule 56.1 Statement, which takes the form of a Declaration from Waleed Khaliq ("Khaliq Decl." (Dkt. #20)). While Respondent's submission does not comply with Rule 56.1, the Court has exercised its discretion to consider it in resolving Petitioners' motion. *See* Local Civ. R. 56.1(b) ("The papers opposing a motion for summary judgment must include a correspondingly numbered paragraph admitting or denying, and otherwise responding to, each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."), (d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)."). Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. In addition, the Court relies on various exhibits to the Declaration of Brian Spencer ("Spencer Decl." (Dkt. #11)), the Declaration of William Davidian ("Davidian Decl." (Dkt. #12)), the Declaration of Maura Moosnick ("Moosnick Decl." (Dkt. #13)), and the Reply Declaration of Maura Moosnick ("Moosnick Reply Decl." (Dkt. #26)).

For ease of reference, the Court refers to Petitioners' memorandum of law in support of their motion for summary judgment as "Pet. Br." (Dkt. #14); to Respondent's memorandum of law in opposition to Petitioners' motion as "Resp. Opp." (Dkt. #22); and to Petitioners' reply memorandum of law as "Pet. Reply" (Dkt. #25).

The New York City District Council of Carpenters (the "Union") is a labor organization that represents employees within the trade jurisdiction of the Independent Building Construction crafts in the geographic area of New York City. (Pet. 56.1 ¶ 4). The Union represents certain employees of Respondent. (*Id.*). Respondent is a contractor that was bound by a collective bargaining agreement with the Union. (*Id.* ¶ 5).

Between October 18, 2018, and April 27, 2023, in connection with work performed on various public projects, Respondent executed a series of Project Labor Agreement ("PLA") affidavits and letters of assent, thereby becoming bound to various PLAs. (Pet. 56.1 ¶¶ 6-7). The PLAs bound Respondent to the Independent Building Construction Agreement (the "CBA") with the Union covering the period from July 1, 2017, to June 30, 2024, for all PLA-related work. (*Id.* ¶ 10). Under the CBA and the PLAs, Respondent had to remit certain hourly contributions to the Funds for every hour of work performed that fell under the Union's trade and geographical jurisdiction. (*Id.* ¶¶ 8, 10, 12).

The CBA also required Respondent to adhere to any "documents, policies, and regulations" adopted by the trustees of the Funds. (Pet. 56.1 ¶ 13). One such policy, the Collection Policy, enabled the Funds and any accounting firms they engaged to audit Respondent's books for compliance with the benefit fund contribution policy. (*Id.* ¶¶ 14-16). The CBA and the Collection Policy designated arbitration as the "final and binding" means of resolving disputes. (*Id.* ¶¶ 17-19). They empowered the Funds' trustees to

select arbitrators, who would have "full and complete authority to decide any and all issues" arising out of disputes between Petitioners and Respondent. (*Id.* ¶¶ 18-19).

The CBA and the Collection Policy further provide that, should the Funds be required to arbitrate a dispute or file a lawsuit over unpaid contributions, the Funds could collect, in addition to the delinquent contributions: (i) interest on the unpaid contributions at the prime rate plus 2%; (ii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages in the amount of 20% of the unpaid contributions; (iii) audit costs; and (iv) reasonable costs and attorneys' fees incurred by the Funds for all time spent in collection efforts. (Pet. 56.1 ¶ 20). The Collection Policy further provides that if a matter proceeds to arbitration or litigation, the employer will be additionally responsible for damages (including attorneys' fees) and the entire cost of a payroll review and audit. (*Id.* ¶ 21).

**2. The Underlying Arbitration**

Petitioners conducted an audit of Respondent's books covering the period between March 28, 2022, and June 25, 2023, and found that Respondent had failed to remit contributions to the Funds in the revised principal amount of $419,487.46. (Pet. 56.1 ¶ 22). After Respondent failed to pay that amount, Petitioners commenced an arbitration before J.J. Pierson (the "Arbitrator"), one of the individuals designated in the Collection Policy, who mailed a Notice of Hearing to the parties. (*Id.* ¶¶ 23-24). The Arbitrator held preliminary

evidentiary hearings on November 25, 2024, and March 24, 2025, during which Respondent was represented by counsel and an owner. (*Id.* ¶ 25).

The parties dispute some aspects of the events that followed, but it is clear that the Arbitrator at some point scheduled the final hearing for May 19, 2025, a date on which Respondent's counsel was unable to attend due to a prior commitment. Respondent's counsel insists that the date was set "unilaterally" by Petitioners' counsel (Resp. Opp. 4), while Petitioners' counsel points to emails showing that Respondent's counsel was aware of the hearing date well in advance (Moosnick Reply Decl., Ex. 5 ("Pet. Hearing Letter")). The hearing was held on that day, and at that hearing, Respondent was represented by its owner. (Pet. 56.1 ¶ 28).

The Arbitrator rendered an award in favor of Petitioners on June 1, 2025 (the "Award"). (Davidian Decl., Ex. 8 ("Award"), at 6). He determined that Respondent, in violation of the CBA, had failed to remit "accurate and timely" contributions to the Funds. (*Id.* at 5). The Arbitrator ordered Respondent to pay Petitioners a sum of $764,456.99, consisting of the revised principal amount of $419,487.46, interest thereon of $120,720.22, liquidated damages of $120,720.22, audit costs of $40,967.85, promotional fund contributions of $968.29, transcription fee receipts of $1,320.64, attorney fees of $7,122.10, the Arbitrator's fee of $4,000 in accordance with the CBA, and non-audit late interest payments of $49,150.21. (*Id.*).[2] The Arbitrator also ordered that

---

[2] The Award purports to include court costs of $402 (Award 5), but the total amount does not appear to include such costs. If those costs were included, the total amount awarded would be $764,858.99.

Respondent would be liable for all subsequent court costs to enforce the Award, including the $405 filing fee, and for pre-judgment interest calculated at an annual rate of 9.5%. (*Id.*). Petitioners served Respondent with a letter demanding compliance with the Award on June 4, 2025, but, to date, Respondent has failed to comply. (Pet. 56.1 ¶¶ 34-35).

**B. Procedural Background**

Petitioners seek an order and judgment from this Court confirming the Award pursuant to Section 301 of the LMRA. Petitioners filed a petition to confirm the Award on January 29, 2026 (Dkt. #1), which the Court directed Petitioners to re-submit as a motion for summary judgment (Dkt. #7). *See D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006) (observing that proceedings to confirm an arbitration award should be "treated as akin to a motion for summary judgment"). Petitioners did so on February 13, 2026, including with their submissions a supporting memorandum of law, a Rule 56.1 statement of undisputed material facts, and declarations from their Employer Services Director, William Davidian, their attorney of record, Maura Moosnick, and the Contracts & Jurisdiction Manager for the Union, Brian Spencer. (Dkt. #10-15).

Respondent filed its responsive submission on March 16, 2026, alongside a declaration from Everlast president Waleed Khaliq, which functioned as a response to Petitioners' Rule 56.1 statement, and affirmation by its attorney of record, Peter Kutil. (Dkt. #20-22, 24). Petitioners filed their

reply on March 25, 2026, including a reply declaration from Ms. Moosnick. (Dkt. #25-26).

## DISCUSSION

### A. The Court Confirms the Award

#### 1. Applicable Law

##### a. Judicial Review of Arbitration Awards

In the Second Circuit, the confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Florasynth, Inc.* v. *Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984). Accordingly, a court's inquiry is narrow in scope: It is obligated to confirm an arbitration award "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Barbier* v. *Shearson Lehman Hutton Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). Indeed, "[o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary [for the court] to confirm [an] award." *Id.* (quoting *Landy Michaels Realty Corp.* v. *Loc. 32B-32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).

This is particularly true with respect to labor arbitration awards. "Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Loc. 802, Associated Musicians of Greater N.Y.* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). In the Second Circuit, it is "well established" that judicial review of a labor arbitration award is "narrowly circumscribed and highly deferential —

indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016). The court's task is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by the [LMRA]" — that is, "that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)).

**b. Limited Bases for Vacatur**

While "[t]he FAA does not apply to arbitrations ... conducted pursuant to the LMRA, ... 'the federal courts have often looked to the [FAA] for guidance in labor arbitration cases.'" *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 n.13 (second alteration in original) (quoting *United Paperworkers Int'l Union*, 484 U.S. at 40 n.9). The FAA creates "mechanisms for enforcing arbitration awards: a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C.* v. *Mattel, Inc.,* 552 U.S. 576, 582 (2008) (citing 9 U.S.C. §§ 9-11). A court must grant a motion to confirm an arbitration award unless the award "is vacated, modified, or corrected" under § 10 or § 11 of the FAA. *Id.* There are four statutory grounds for vacatur:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Respondent argues that the Award should be vacated because the Arbitrator (i) displayed evident partiality towards Respondent, (ii) was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, and (iii) exceeded his powers. (*See generally* Resp. Opp.). Despite the uncertainty as to whether these bases for vacatur apply to actions under the LMRA, *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 n.13 ("[W]e have never held that the requirement of 'fundamental fairness' applies to arbitration awards under the LMRA."), the Court discusses the applicable law for each proffered basis for vacatur.

**i. Evident Partiality**

An arbitration award may be vacated for "evident partiality or corruption," 9 U.S.C. § 10(a)(2), "only 'where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration,'" *Scandinavian Reinsurance Co.* v. *St. Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Applied Indus. Materials Corp.* v. *Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132, 137 (2d Cir. 2007). The party moving to

vacate the award must show "something more than the mere 'appearance of bias,'" *Morelite Constr. Corp.* v. *N.Y.C. Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 83-84 (2d Cir. 1984), and the showing "must be direct and not speculative," *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, v. *YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Still, "[a] conclusion of partiality can be inferred 'from objective facts inconsistent with impartiality.'" *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (quoting *Pitta* v. *Hotel Ass'n of N.Y.C., Inc.*, 806 F.2d 419, 423 n.2 (2d Cir. 1986)).

Partiality can be found where there is a demonstrated motive for an arbitrator to favor one party over the other. *See, e.g.*, *Commonwealth Coatings Corp.* v. *Continental Cas. Co.*, 393 U.S. 145, 146-50 (1968) (determining that an undisclosed business relationship with a party constituted evident arbitrator partiality). "Among the circumstances under which the evident-partiality standard is likely to be met are those in which an arbitrator fails to disclose a relationship or interest that is strongly suggestive of bias in favor of one of the parties." *Scandinavian Reinsurance Co.*, 668 F.3d at 72.

"Evidence of corruption must be abundantly clear in order to vacate an award under [Section] 10(a)(2)." *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104. And "the unique role of arbitrators, whose special expertise arises from wide experience in their fields, sometimes leads to a gain of their professional knowledge and skill at the cost of the appearance of less than complete impartiality." *Pitta*, 806 F.2d at 423 (first citing *Florasynth, Inc.*, 750 F.2d at 173-74; then citing *Morelite Constr. Corp.*, 748 F.2d at 83).

**ii. Arbitrator Misconduct**

Under Section 10(a)(3), vacatur is warranted if the arbitrator engaged in misconduct "in refusing to postpone the hearing, upon sufficient cause shown," "in refusing to hear evidence pertinent and material to the controversy," or in engaging in "other misbehavior" that prejudiced a party's rights. 9 U.S.C. § 10(a)(3). "Arbitrators are 'not required to hear all the evidence proffered by a party' but only to 'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Ainsworth* v. *Spartan Cap. Sec., LLC*, No. 25 Civ. 5039 (DEH), 2026 WL 472586, at *4 (S.D.N.Y. Feb. 19, 2026) (quoting *Tempo Shain Corp.* v. *Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

"It is well settled that procedural questions that arise during arbitration, such as ... which evidence to receive or exclude, are left to the sound discretion of the arbitrator and should not be second-guessed by the courts." *Nat'l Football League Mgmt. Council*, 820 F.3d at 545 (citing *United Paperworkers Int'l Union*, 484 U.S. at 40). The party seeking vacatur must demonstrate that the arbitrator's exclusion of evidence was prejudicial, such that the party's "right to be heard [was] 'grossly and totally blocked.'" *Stifel, Nicolaus & Co., Inc.* v. *Forster*, No. 14 Civ. 6523 (RWS), 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (quoting *Kruse* v. *Sands Bros. & Co., Ltd.*, 226 F. Supp. 2d 484, 488 (S.D.N.Y. 2002)).

With particular regard to postponements, arbitrators "must be empowered to enforce procedural deadlines," and "[t]he time frames that

arbitrators allow under approved schedules for discovery … ordinarily are sufficient to provide [the parties] with adequate opportunity to present evidence and arguments." *Landmark Ventures, Inc.* v. *InSightec, Ltd.*, 63 F. Supp. 3d 343, 352 (S.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Triomphe Partners, Inc.* v. *Realogy Corp.*, No. 10 Civ. 8248 (PKC), 2011 WL 3586161, at *5 (S.D.N.Y. Aug. 15, 2011), *reconsideration granted in part on other grounds*, No. 10 Civ. 8248 (PKC), 2012 WL 266890 (S.D.N.Y. Jan. 30, 2012)). A court's "review is restricted to determining whether the procedure was fundamentally unfair," and unless "fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp.*, 120 F.3d at 20 (internal quotation marks omitted) (quoting *Teamsters, Loc. Union 657* v. *Stanley Structures, Inc.*, 735 F.2d 903, 906 (5th Cir. 1984)); *accord Barron* v. *Shapiro*, No. 25-77, 2026 WL 251659, at *2 (2d Cir. Jan. 30, 2026) (summary order).

**iii. Excess-of-Powers**

A party seeking relief on the basis that arbitrators exceeded their powers "bears a heavy burden." *Oxford Health Plans LLC* v. *Sutter*, 569 U.S. 564, 569 (2013). Under that provision, the "sole question … is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* Indeed, "[t]he crux of the excess-of-powers standard is 'whether the arbitrator's award draws its essence from the collective bargaining agreement.'" *American Postal Workers Union* v. *U.S. Postal Serv.*, 754 F.3d 109, 112-13 (2d Cir. 2014) (quoting *St. Mary Home, Inc.* v. *Serv.*

*Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997)). As long as the issue was "'properly submitted to the arbitrator in the first instance,' vacatur under the excess-of-powers provision is appropriate only in the 'narrowest' of circumstances." *American Postal Workers Union*, 754 F.3d at 113 (alteration adopted) (quoting *Jock* v. *Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011)). The upshot is that "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC*, 569 U.S. at 569 (quoting *E. Associated Coal Corp.* v. *Mine Workers, Dist. 17*, 531 U.S. 57, 62 (2000)).

**c. Summary Judgment Under Federal Rule of Civil Procedure 56**

Courts in the Second Circuit generally treat an application to confirm or vacate an arbitral award as "akin to a motion for summary judgment." *City of New York* v. *Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (internal quotation marks omitted) (quoting *D.H. Blair & Co.*, 462 F.3d at 109). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Thus, "[a] motion for summary judgment may properly be granted … only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Kaytor* v. *Elec. Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)).

"[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Negrete* v. *Citibank, N.A.*, 237 F. Supp. 3d 112, 122 (S.D.N.Y. 2017) (quoting *Liberty Lobby*, 477 U.S. at 248), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) (summary order).

**2. Analysis**

**a. The Court Confirms the Award**

The Court concludes that the Award meets "the minimum legal standards" for confirmation under the LMRA — "that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Nat'l Football League Mgmt. Council*, 820 F.3d at 532 (quoting *United Paperworkers Int'l Union*, 484 U.S. at 38). The CBA, to which Respondent agreed by assenting to various PLAs, declared that Respondent "shall make contributions for each hour worked of all employees covered by this Agreement and employed by [Respondent] within the territory of this Agreement" in amounts specified by the CBA. (Spencer Decl., Ex. H ("CBA"), art. XV § 1). It required Respondent to produce "all pertinent books and records" at the "sole discretion" of the Funds' trustees for purposes of conducting a "complete audit." (*Id.*). Finally, the CBA required all unresolved grievances to be submitted to an arbitrator, who would

have authority to render a “final and binding” decision “upon both parties.” (*Id.*, art. XII § 3).

The Award explained that, “as a result of an audit performed by an Independent Auditing Firm, it was determined that the Respondent was deficient in remitting fringe benefit contributions to the Funds.” (Award 2). While Respondent “objected to 3,714.5 hours included in the audit report,” the Arbitrator concluded that “neither credible nor reliable documentation was provided by [Respondent] (or Counsel) to further reduce the deficiencies and delinquencies reflected in the audit report.” (*Id.* at 2-3). In rejecting Respondent’s claims, the Arbitrator noted that “exchanges of communication, offers of proof, a revised audit … and additional hearings were conducted to provide [Respondent] extended opportunity to submit documentation and further reduce the asserted deficiency principal.” (*Id.* at 3).

The Award properly considers and interprets the obligations imposed by the CBA. And in issuing the Award, the Arbitrator was acting within his authority, as set forth in the CBA. Accordingly, the Court concludes that there clearly exists a “colorable justification” for the Award. *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted) (quoting *Landy Michaels Realty Corp.*, 954 F.2d at 797).

**b. Respondent Has Not Timely Asserted Its Grounds for Vacatur**

Respondent not only opposes confirmation, but proffers various reasons why the Award should be vacated. Specifically, as discussed above, Respondent argues that the Arbitrator (i) displayed evident partiality towards

Respondent, (ii) was guilty of misconduct in refusing to hear evidence pertinent and material to the controversy, and (iii) exceeded his powers. (*See generally* Resp. Opp.). As it happens, those affirmative defenses to confirmation are time-barred, and the Court need not consider them.

The Second Circuit has repeatedly held that claims brought under Section 301 of the LMRA are subject to the ninety-day statute of limitations prescribed by New York Civil Practice Law and Rules ("CPLR") § 7511(a). *See Loc. 802, Associated Musicians of Greater N.Y.*, 145 F.3d at 88-89; *Harry Hoffman Printing, Inc.* v. *Graphic Commc'ns, Int'l Union, Loc. 261*, 912 F.2d 608, 609, 612 (2d Cir. 1990)). This time limit does not apply only to formal motions to modify or vacate arbitration awards. Instead, any "grounds for vacating an arbitration award may not be raised as an affirmative defense after the period provided in" CPLR § 7511(a). *Loc. 802, Associated Musicians of Greater N.Y.*, 145 F.3d at 89.

The Arbitrator issued the Award on June 1, 2025, and Respondent failed to contest the Award until its opposition filings on March 16, 2026. Respondent thus failed to timely assert its grounds for vacatur and cannot raise them in defense to confirmation here. In the interest of completeness, however, the Court will proceed to address the merits of Respondent's arguments for vacatur.

### c. Even if Respondent Could Assert Its Grounds for Vacatur, Its Arguments Would Be Unavailing

#### i. Evident Partiality

Respondent's counsel maintains that certain communications between the parties demonstrate the Arbitrator's partiality. (Moosnick Decl., Ex. P ("Pre-Hearing Letter"), at 2-3; *see also* Resp. Opp. 5 (claiming partiality more generally)). But here, a reasonable person would not "have to conclude that the Arbitrator was partial to one party to the arbitration." *Scandinavian Reinsurance Co.*, 668 F.3d at 72. In an earlier letter to the Arbitrator, Respondent's counsel asserted that the Arbitrator's "unwarranted, curt response [to a communication from Respondent's counsel] shows a bias that is difficult to explain." (Pre-Hearing Letter 2). He also claimed that "[o]nly in a forum where [Petitioner's counsel] knows the arbitrator is biased in her favor, would any reasonable person try such illegitimate and false tactics to deny the right to a hearing." (*Id.* at 2). These claims of bias are "speculative" rather than "direct." *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104.

Even taking Respondent's characterization at face value, a curt tone is hardly evidence of bias. And an attorney's standard advocacy for her client before an Arbitrator, which may often involve making statements that opposing counsel finds unreasonable, surely cannot constitute evidence of the *Arbitrator's* bias. While "[a] conclusion of partiality can be inferred 'from objective facts inconsistent with impartiality,'" none of these communications comes close to the high bar for demonstrating evident partiality. *Scandinavian Reinsurance Co.*, 668 F.3d at 72 (quoting *Pitta*, 806 F.2d at 423 n.2).

Respondent also asserts that the Arbitrator demonstrated bias in setting the May 19, 2025 meeting date. The Court addresses this point more thoroughly in the following section, but it suffices to say that, without more, Respondent fails to show "something more than the mere 'appearance of bias.'" *Morelite Constr. Corp.*, 748 F.2d at 83. Finally, no other ground for a finding of evident partiality, such as a demonstrated motive for an arbitrator to favor one party or "abundantly clear" evidence of corruption, is present. *Kolel Beth Yechiel Mechil of Tartikov, Inc.*, 729 F.3d at 104-05.

**ii. Arbitrator Misconduct**

Respondent next claims that the Arbitrator engaged in misconduct by scheduling the final hearing for May 19, 2025, which denied Respondent "an adequate opportunity to present its evidence and argument." *Tempo Shain Corp.*, 120 F.3d at 20 (internal quotation marks omitted) (quoting *Hoteles Condado Beach* v. *Union De Tronquistas Loc. 901*, 763 F.2d 34, 39 (1st Cir. 1985)). In particular, Respondent's counsel suggests that the schedule prejudiced Respondent by preventing counsel from cross-examining the auditor of Respondent's books. (Pre-Hearing Letter 2-4; Resp. Opp. 2, 5). The claim fails.

As an initial matter, the CBA authorizes the Arbitrator "to conduct an ex-parte hearing in the event of the failure of either party to be present at the time and place designated for the arbitration, and … to render a decision based on the testimony before him at such hearing." (CBA art. XII § 3). That provision alone is dispositive because it shows that the Arbitrator acted in accordance

with the CBA — a far cry from "ignor[ing] the plain language of the contract." *Nat'l Football League Mgmt. Council*, 820 F.3d at 532 (internal quotation marks omitted) (quoting *United Paperworkers Int'l Union*, 484 U.S. at 38). Even if that provision did not exist, however, Respondent could not prevail.

The record shows that Respondent had "an adequate opportunity" to present its side of the case, even if counsel could not attend the final hearing. *Tempo Shain Corp.*, 120 F.3d at 20 (internal quotation marks omitted) (quoting *Hoteles Condado Beach*, 763 F.2d at 39). While the parties have chosen not to submit the full record of communications between themselves and the Arbitrator to the Court, certain exhibits to their submissions are sufficient to dispose of the present issues.

First, while Respondent's counsel claims that Petitioners' counsel, with the Arbitrator's support, "unilaterally" selected May 19, 2025, as the date of the hearing (Resp. Opp. 4), Respondent's counsel had notice of that date no later than April 23, 2025, according to an email on which he was copied that unambiguously stated the date of the final hearing (Pet. Hearing Letter). As such, even if that date had been selected in precisely the manner Respondent alleges, the Court cannot conclude that Respondent's "right to be heard [was] 'grossly and totally blocked.'" *Stifel, Nicolaus & Co., Inc.*, 2015 WL 509684, at *5 (quoting *Kruse*, 226 F. Supp. 2d at 488). This is especially true where, as here, the previous hearing, which was held on March 24, 2025, appears to have focused "in depth" on the precise issue under dispute. (*See* Pet. Hearing

Letter (Petitioner's counsel's description of the substance of the March hearing)).

Moreover, because Respondent was able to argue against consideration of the "'unknown location' jobs" at issue in the audit on at least two occasions (*viz.*, at the March 24, 2025 hearing and in its May 18, 2025 letter), it is immaterial that the Arbitrator made "no mention or analysis" of that point in the Award. (Resp. Opp. 5). Indeed, by the admission of Respondent's president, "[Respondent] and its counsel submitted detailed analysis" of the relevant issue. (Khaliq Decl. ¶ 7). Declining to assign weight to certain evidence in a final opinion is a far cry from "misbehavior" such as prejudicially "refusing to hear evidence." 9 U.S.C. § 10(a)(3).

In short, because "procedural questions that arise during arbitration ... should not be second-guessed by the courts," *Charleston Immersive/Interactive Media Studio, LLC* v. *Aydin*, No. 24 Civ. 4943 (PAE), 2025 WL 219933, at *4 (S.D.N.Y. Jan. 16, 2025) (internal quotation marks omitted) (quoting *Nat'l Football League Mgmt. Council*, 820 F.3d at 545), the Court declines to vacate the Award on the grounds that the Arbitrator scheduled a conference that Respondent's counsel could not attend.

**iii. Excess of Power**

Respondent claims that the Arbitrator exceeded his powers in erroneously classifying certain work that Respondent performed as subject to remittance requirements. (Resp. Opp. 5). This argument comes nowhere near meeting the "heavy burden" required for an excess-of-power claim. *Oxford*

*Health Plans LLC*, 569 U.S. at 569. As explained above, the CBA authorizes the Arbitrator to render "final and binding" decisions on disputes arising out of the CBA (CBA art. XII § 3), including whether Respondent has made "contributions for each hour worked of all employees covered by this Agreement and employed by [Respondent] within the territory of this Agreement" in the specified amounts (*id.* art. XV § 1). The Arbitrator, in classifying certain work as subject to remittance requirements, was acting squarely within his powers. Finding otherwise would require weighing the merits of the case, which courts reviewing arbitration awards do not do. *See Oxford Health Plans LLC*, 569 U.S. at 569. Consequently, none of Respondent's arguments for vacatur — even if they were raised properly — would be meritorious.

## B. The Court Awards Reasonable Attorneys' Fees and Costs

### 1. Applicable Law

#### a. Awarding Attorneys' Fees

"Generally, 'in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award.'" *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Formula 1 Builders, LLC*, No. 17 Civ. 1234 (GHW), 2017 WL 1483369, at *4 (S.D.N.Y. Apr. 25, 2017) (quoting *Int'l Chem. Workers Union, Loc. No. 227* v. *BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985)). But while Section 301 of the LMRA does not provide for the award of attorneys' fees, two independent bases may support an award of fees.

*First*, "a contractual provision for the payment of [attorneys'] fees provides a basis to award them." *N.Y.C. Dist. Council of Carpenters* v. *JFD Sales Consulting Servs. Corp.*, No. 17 Civ. 3733 (LGS), 2017 WL 4736742, at *2 (S.D.N.Y. Oct. 19, 2017). *Second*, a court may "exercise its inherent equitable powers to award attorneys' fees when opposing counsel acts in bad faith." *N.Y.C. Dist. Council of Carpenters* v. *Gen-Cap Indus., Inc.*, No. 11 Civ. 8425 (JMF), 2012 WL 2958265, at *5 (S.D.N.Y. July 20, 2012). A finding of bad faith may be made "when a challenger refuses to abide by an arbitrator's decision without justification[.]" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Mountaintop Cabinet Mfr. Corp.*, No. 11 Civ. 8075 (JMF), 2012 WL 3756279, at *4 (S.D.N.Y. Aug. 29, 2012) (internal quotation marks omitted) (quoting *N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Angel Constr. Grp., LLC*, No. 08 Civ. 9061 (RJS), 2009 WL 256009, at *2 (S.D.N.Y. Feb. 3, 2009)).

**b. Calculating Reasonable Attorneys' Fees**

To determine an appropriate attorneys' fees award, the Court must assess the reasonableness of the attorney's hourly rate and the number of hours that she billed at that rate. *See Lilly* v. *City of New York*, 934 F.3d 222, 227-33 (2d Cir. 2019). "A reasonable hourly rate is what a reasonable, paying client would be willing to pay." *N.Y.C. & Vicinity Dist. Council of Carpenters* v. *Plaza Constr. Grp., Inc.*, No. 16 Civ. 1115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (internal quotation marks omitted) (quoting *Watkins* v. *Smith*, No. 12 Civ. 4635 (DLC), 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015)). "A reasonable hourly rate is a rate 'in line with ... prevailing rates in the

community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel. Prendergast* v. *Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (alteration adopted) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 n.11 (1984)).

"'It is within the Court's discretion to reduce the requested rate' when the Court finds the rate unreasonable in the relevant market." *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Mahi Painting, Inc.*, No. 22 Civ. 6496 (GHW), 2022 WL 7584364, at *5 (S.D.N.Y. Oct. 13, 2022) (alteration adopted) (quoting *Trs. of Mason Tenders Dist. Council Welfare Fund* v. *Stevenson Contracting Corp.*, No. 05 Civ. 5546 (GBD) (DF), 2008 WL 3155122, at *9 (S.D.N.Y. June 19, 2008), *report and recommendation adopted*, No. 05 Civ. 5546 (GBD) (DF), 2008 WL 2940517 (S.D.N.Y. July 29, 2008)). "'Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded' from the calculation of a reasonable fee." *Id.* (quoting *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)). A court retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours, colloquially referred to as "trimming fat." *E.g.*, *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *accord McDonald*, 450 F.3d at 96.

In addition to attorneys' fees, the prevailing party may also recover reasonable costs incurred in seeking confirmation of an arbitral award. Generally, courts in this Circuit will "grant 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Metroplex Serv. Grp., Inc.*,

No. 18 Civ. 5889 (PAE), 2018 WL 4141034, at *6 (S.D.N.Y. Aug. 30, 2018) (quoting *LeBlanc-Sternberg* v. *Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

**2. Analysis**

Here, the first basis for providing attorneys' fees is met. The CBA makes Respondent liable for "any accountants' and attorneys' fees incurred by the Union and/or fund trustees, plus costs of litigation, which have resulted from the bringing of [court action to enforce an arbitration award]." (CBA art. XVII § 19(c)). The Collection Policy states that such "fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services." (Davidian Decl., Ex. M ("Collection Policy"), § V(6)). The Court therefore deems it appropriate to award attorneys' fees.

Next, the Court assesses the reasonableness of the fees sought. In addition to the amounts specified in the Award, which the Court has already granted in confirming the Award, Petitioners seek $7,331.40 in attorneys' fees for 23.7 hours of work performed by Virginia & Ambinder, LLP ("V&A"), and $251.95 in costs related to the filing of this matter, which excludes the $402 in court costs set forth in the Award. (Pet. 56.1 ¶¶ 43-44).

V&A submitted hourly rates for the partner, associate, and three legal assistants who worked on this case. Maura Moosnick, a 2021 graduate of Fordham University School of Law and a partner at V&A, was billed out by the firm at a rate of $430 per hour for her work on this action. (Moosnick Decl. ¶ 17; *id.*, Ex. T ("V&A Bill")). Ms. Moosnick worked a total of 3.1 hours on this case, resulting in a total cost of $1,333 for her services. (V&A Bill). Allison

Herstic, a 2024 graduate of Cardozo School of Law and an associate at V&A, was billed out by the firm at a rate of $325 per hour for her work on this action. (Moosnick Decl. ¶ 18; V&A Bill). Ms. Herstic worked a total of 16.3 hours on this case, resulting in a total cost of $5,297.50 for her services. (V&A Bill). Lastly, three legal assistants at V&A, Alice Gaalswyk, Jenya Polavarapu, and Eva Keating, worked a total of 4.3 hours on this case at a rate of $163 per hour, resulting in a total cost of $700.90 for their work. (Moosnick Decl. ¶¶ 19-21; V&A Bill).

The Court has reviewed the time records and compared them against the prevailing rates in the community. It finds the rates requested for the work of the three legal assistants and for Ms. Moosnick to be reasonable, though it slightly adjusts Ms. Herstic's rate to $250 per hour. It also imposes an across-the-board 10% reduction.

Beginning with Ms. Moosnick, the Court finds her hourly rate of $430 to be reasonable given that her "primary practice area is the representation of multiemployer benefit funds, including in LMRA and ERISA enforcement actions" and that she "routinely handle[s] … petitions to confirm arbitration awards." (Moosnick Decl. ¶ 17). *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *P 786, Inc.*, No. 25 Civ. 3460 (RA), 2026 WL 1091031, at *3 (S.D.N.Y. Apr. 22, 2026) (approving Ms. Moosnick's hourly rate at $430); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Minelli Constr. Co.*, No. 25 Civ. 1036 (GHW), 2025 WL 1360452, at *7 (S.D.N.Y. May 7, 2025) (same); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Prime*

*Installations, Inc.*, No. 24 Civ. 8250 (LGS) (RFT), 2026 WL 979229, at *9 (S.D.N.Y. Mar. 20, 2026) (approving Ms. Moosnick's hourly rate at $430 despite acknowledging that it falls at "the high end of the range of hourly rates approved by Courts in this Circuit for partners in ERISA and LMRA actions").

As for Ms. Herstic, the Court does not find her hourly rate of $325 to be reasonable. In the past, this Court found that an hourly rate of $225 represents the upper bound of the appropriate rate for an attorney with Ms. Herstic's experience. *See, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Rashel Constr. Corp.*, No. 22 Civ. 9854 (KPF), 2023 WL 3849103, at *7 (S.D.N.Y. June 6, 2023) (reducing Ms. Moosnick's rate, as an associate, from $275 to $225 per hour); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Blue Moon Health Mgmt. LLC*, No. 22 Civ. 1807 (KPF), 2022 WL 16578119, at *7 (S.D.N.Y. Oct. 31, 2022) (same)*; see also Mahi Painting, Inc.*, 2022 WL 7584364, at *6 (same); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Triangle Enter. NYC, Inc.*, No. 20 Civ. 793 (RA), 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (reducing the rate of another V&A associate from $275 to $225 per hour); *Metroplex Serv. Grp., Inc.*, 2018 WL 4141034, at *5 (noting that the $225 per hour rate "represents the upper bound of prevailing rates in this District for junior associates" in these types of cases). But the Court also agrees that billing rates ought to be "updat[ed] ... for inflation and market conditions." *Minelli Constr. Co.*, 2025 WL 1360452, at *7 (internal quotation marks omitted) (quoting *Rubin* v. *HSBC Bank USA, NA*, No. 20 Civ. 4566 (FB),

2025 WL 248253, at *5 (E.D.N.Y. Jan. 21, 2025). It thus recognizes a rate of $250 per hour for Ms. Herstic's work.

Finally, the Court follows sister courts in this District and finds the hourly rate of $163 for V&A legal assistants to be reasonable. *See, e.g.*, *Minelli Constr. Co.*, 2025 WL 1360452, at *7 (approving rates of $155 and $163 for V&A legal assistants); *Prime Installations, Inc.*, 2026 WL 979229, at *9 (same); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *AAA Windows & Doors Corp.*, No. 25 Civ. 2646 (GHW), 2025 WL 1898539, at *7 (S.D.N.Y. July 8, 2025) (approving the rate of $163 for V&A legal assistants); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Prime Contractors, Inc.*, No. 23 Civ. 872 (PAE), 2023 WL 2823020, at *4 (approving the rate of $155 for legal assistants in similar litigation in 2023).

With respect to hours worked, the Court will impose a 10% across-the-board reduction on the fee because Petitioners' counsel has generally been awarded fees for substantially fewer hours worked in the past. For example, in *Trustees of the New York City District Council of Carpenters Pension Fund* v. *Allac LLC*, a sister court in this District explained that the V&A had "been awarded, on average, four hours' worth of fees per petition." No. 25 Civ. 10777 (VEC), 2026 WL 1298411, at *5 (S.D.N.Y. May 12, 2026). Certainly, the cases described in *Allac* involved unopposed motions, and the Court would thus expect a higher bill here than in those cases. But 23.7 hours of fees appears excessive in light of the amount of briefing and nature of the claim. A 10%

deduction thus serves to trim the fat. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 237.

In sum, Petitioners' request for attorneys' fees is granted at the requested rate of $430 per hour for Ms. Moosnick's work, the reduced rate of $250 per hour for Ms. Herstic's work, and the requested rate of $163 per hour for the legal assistants' work. It is also reduced by 10%, yielding a total award of $5,498.01 in additional attorneys' fees.

The Court also finds Petitioners' request for $251.95 in costs to be reasonable. This figure excludes the $405 in costs awarded by the Arbitrator and consists primarily of postage and service fees, which courts regularly permit. (Moosnick Decl. ¶ 16; V&A Bill). *See Rashel Constr. Corp.*, 2023 WL 3849103, at *8 (finding $164.14 in costs to be reasonable when excluding the $400 in costs awarded by the arbitrator); *Plaza Constr. Grp., Inc.*, 2016 WL 3951187, at *2 ("Recovery of such costs is routinely permitted."); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Innovation Designs Inc.*, No. 21 Civ. 2801 (KPF), 2021 WL 4869951, at *8 (S.D.N.Y. Oct. 18, 2021) (finding $109.40 in costs to be reasonable when excluding the $400 in costs awarded by the arbitrator); *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Onyx Glass & Metal Corp.*, No. 14 Civ. 7333 (PAE), 2015 WL 5144120, at *7 (S.D.N.Y. Sept. 1, 2015) (permitting recovery of $447.50 in costs that included postal charges and filing fees).

**C. The Court Awards Pre- and Post-Judgment Interest**

Finally, Petitioners request interest — both from the date of the Award and from the date of this Court's judgment. (Pet. Br. 15-16). Beginning with the former, the Court acknowledges that "[p]ost-award, prejudgment interest is generally awarded at the discretion of the district court, and there is a presumption in favor of awarding such interest." *Westchester Fire Ins. Co.* v. *Massamont Ins. Agency*, 420 F. Supp. 2d 223, 226 (S.D.N.Y. 2005) (citing *In re Waterside Ocean Navigation Co.* v. *Int'l Navigation Ltd.*, 737 F.2d 150, 153-54 (2d Cir. 1984); *Irving R. Boody & Co.* v. *Win Holdings Int'l, Inc.*, 213 F. Supp. 2d 378, 383 (S.D.N.Y. 2002)). In particular, "New York law provides for prejudgment interest running from the date of an arbitration award until the entry of final judgment." *Finger Lakes Bottling Co.* v. *Coors Brewing Co.*, 748 F. Supp. 2d 286, 292 (S.D.N.Y. 2010) (citing CPLR § 5002) (collecting cases).

"[D]istrict courts in this Circuit have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Trs. of the N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Coastal Env't Grp., Inc.*, No. 16 Civ. 6004 (GHW), 2016 WL 7335672, at *3 (S.D.N.Y. Dec. 16, 2016) (quoting *Serv. Emp. Int'l Union, Loc. 32BJ* v. *Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004)), *cited in Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Blackstar Mech. Grp. 740 Inc.*, No. 23 Civ. 3163 (JPC), 2024 WL 1988327, at *5 (S.D.N.Y. May 6, 2024). Such is the case here. (*See* CBA art.

XV § 7 ("The arbitrator's award in this regard shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction."); *see also* Pet. 56.1 ¶ 20 (noting that both the CBA and the Collection Policy authorize the award of interest in the event of an arbitration)). Accordingly, the Court will award pre-judgment interest at an annual rate of 9.5 percent — the rate specified by the Arbitrator in the Award — from the date of the Award, June 1, 2025, to the date of the entry of judgment in this case. (*See* Award 5).

By contrast, federal law "provides a uniform rate at which post-judgment interest is to accrue on civil money judgments recovered in federal district court." *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (citing 28 U.S.C. § 1961). Specifically, in the post-judgment context,

> [i]nterest shall be allowed on any money judgment in a civil case recovered in a district court ... calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding ... the date of the judgment.

28 U.S.C. § 1961(a). Indeed, "[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered," *Lewis* v. *Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)), and "[a]wards of post-judgment interest under § 1961 ... apply to actions to confirm arbitration awards," *Trs. for the Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (citing *Westinghouse Credit Corp.*, 371 F.3d at 100-01).

Accordingly, the Court grants Petitioners' request for pre- and post-judgment interest.

## CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED as follows: The Clerk of Court is directed to enter judgment in favor of Petitioners in the amount of $849,993.22, consisting of: (i) the arbitration award of $764,456.99, (ii) $5,498.01 in attorneys' fees, (iii) $251.95 in costs, and (iv) $79,786.27 in post-award, prejudgment interest. Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961.

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated: July 7, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge